appearing before us in this Zoom context. We have a couple of extra rules pertinent to the way we're doing this. Number one is please silence any devices that you may have with you or with anyone in the room there. Number two is we don't allow audio or video recordings of this proceeding any more than we would if we were in New Orleans. Our usual rules include that we have the time clock when the yellow light comes on you'll have two minutes left and when it winds down to zero we ask you to answer, conclude your argument or answer the question that only the question that the court has put to you. And the other one is that we have read your briefs and record excerpts we may not have become acquainted with the every page of the record and we do appreciate record citations. This case is number 250282 Kathy Sanchez versus Oliver and we'll hear first from Mr. Thomas. Now unmute yourself. Thank you. I'm Bruce Thomas I represent the plaintiff below the appellant on appeal Kathy Sanchez who is the mother of the decedent Eli Gana. I would like to address the issues in the same order that we raised them in our brief. First whether the qualified immunity defense is available to the individual defendant here Natalie Oliver and then assuming a qualified immunity would be available whether there were nonetheless tribal issues in fact that includes summary judgment. I'll probably leave the patient safety work product privilege issues to our brief unless the court has questions about them of course. First is the qualified for-profit contractor that is systematically organized to perform a major administrative task for a profit and operates relatively with relatively less supervision than a typical government employee. Every appellate court that has addressed that fact pattern has answered the question no qualified immunity is not available. Beginning with the United States Supreme Court decision of Richardson versus McKnight and continuing with cases in the 6th 7th 9th and 11th circuits that we cite in our brief and that is the distinction that this case this court made in Pernichiaro to distinguish those cases in the 6th 9th and 11th circuit that from the from the situation before it then involved two Tulane University professors who were working part-time for a state mental health facility. I think the question because why is this not a straightforward application of Richardson and I actually I think it is but the question becomes did Filarski change things to the Filarski opinion in 2012 so undercut or limit Richardson that Richardson is no longer good law on this and again nearly every court that has addressed that decision has answered that question no. Richardson continues to be good law Filarski did not change anything on this issue of large private contractors formed for-profit to take on administrative tests and that would include cases decided after Filarski by the 6th circuit McCollum the 7th circuit and Curie and a number of district court decisions two of them we cite in our reply brief and particularly Tolbert versus Guzman out of the Eastern District of Louisiana which concerns correct care solutions LLC and also the 2016 New Mexico decision that concerns the very employer that we have here correct CHC and determined that its employees are not entitled to qualified immunity. I wanted to say that there were no other cases that had taken the opposite position but in preparing for one outlier decision that I want to make the court aware of and that is Tanner versus McMurray at 429 F sub 3rd 1047 out of the ironically the District of New Mexico in 2019 I say ironically because that is the same district that issued the CHC opinion that said CHC is not entitled its employees are not entitled qualified immunity but another judgment the that case is on appeal before the 10th circuit it was argued in September and at least as of this morning there's no no decision on it but if the 10th circuit reverses that case then it will still be a a clean sweep for our position if they don't of course then there'll be a circuit split and in the on on this particular fact pattern that the court should be aware of. If you're one is looking for a template for the outlier position Tanner is it it is a well-written opinion it is very lengthy it has a number of it's over 130 pages it's still not comprehensive because it fails to note that there is a as a contrary decision in the own in the court's own district but I think it does make the best case for the outlier position I think ultimately it fails because it fails to follow Richardson and Filarski. Filarski itself doesn't purport to overrule Richardson in fact it purports on its face to affirm it and I think the Tanner decision goes on to suggest that policy consideration since in the correction health care community those players might go out of business if they don't have the benefit of qualified immunity. I think the court takes that too far I don't think that's what we've seen at least prior to 2019 I haven't found any cases that give these private companies their employees qualified immunity and they have not only not going out of business they have grown both organically and by gobbling each other up that's what we see in the marketing materials that that are attached to the contract so I think it's a little overplayed that a CCH for instance is going to leave the business if they don't have qualified immunity for their employees if CCH isn't there I not well Beth that's a separate issue but Wexford or Correct Care Solutions or one of the other large ones will be standing in line to take the business in fact what we see in CCH's promotional materials is not only they are not intimidated by limited by litigation they use their ability to take on team of attorneys and paralegals excuse me are there entities that you can identify that would be competing for the contract to provide the health services at the county jail and throughout this throughout the state are there entities that you can yes yes yes yes judge I think Wexford and Correct Care Solutions are big players in the community Correct Care Solutions is the entity that was an issue in the in the Tobert case out of Louisiana was also the the entity that that in the Tanner case in New Mexico so they're a large large player all over as is Wexford and and and as I said I think they would be standing in line for business. Tanner also importantly concentrates heavily on evidence in that case that there was direct governmental supervision of the employees which is absent here now to be sure the opinion below in our case addresses this issue and infers that Natalie Oliver was closely supervised from provisions in the contract but in fact there's very fresh there's precious little on the contract and there is no direct evidence whatsoever that she was directly supervised by Bell County the evidence we presented is that Natalie Oliver was the only and final decision-maker whether to remove Eli Ghana from suicide watch no one public or private reviewed that decision she made it and he was moved that very weekend and I commit suicide before the end of the weekend so if there's any inference that could be made from that is that Oliver was not closely supervised she made the decision without any assistance or any review by anybody where she disciplined after the suicide no no as far as we know I mean unless there's something in this 23 pages of discovery that we haven't received that we talked about in our third issue and to digress just a second on that my suspicion is there is something in those 23 pages about the supervision issue that specifically impacts on the qualified immunity because I can't I can't believe that that's not the case of course we haven't seen them and we don't we don't know for sure I think we should prevail regardless but to present our best case we would need those documents and and that would allow me to answer that question completely rather than a let me ask you mr. Thomas I and I acknowledge there are a couple of recent decisions that have allowed these suicide cases to go forward one of them was when the police and picked up a fellow just before he was about to jump off a bridge and mr. Ghana may have been quite forthcoming in what he was telling the intake people including miss Sanchez but he hadn't jumped off the bridge figuratively or literally for several months when he last tried to hang himself and he said he hurt himself on Christmas but I didn't see any proof about what that was my question is how do you differentiate this case from Domino I did in 2001 and therefore it would be the governing law under a rule of orderliness I think Domino is there's a straightforward distinction with Domino and the Domino case the prison psychiatrist did not believe the threats were genuine and there was no controverting evidence as there is here with the actions and words of Natalie Oliver that she did take the threats of suicide seriously the in Domino the psychiatrist thought that the individuals are making idle threats for secondary gain there is no suggestion that Eli Ghana was faking his suicidal ideation in fact we know that Natalie Oliver took those threats seriously I would take I would take two exceptions to the characterization judge to respect that it had been several months it had only been two and a half months since she he attempted to hang himself which is the most common way people commit suicide in jail and just the prior week he is that I mean that was the evidence he said that he had hurt himself a that he hears and she said because the very reason she gave for not putting him in isolation was because she considered him a suicide risk she can't have it both ways she can't say I'm going to take him off suicide watch because he's not a suicide risk but I'm not going to put him in isolation because he is a suicide so that's a distinction with Domino there was no controverting evidence in Domino that the psychiatrist ever thought that the individual was a suicide risk well but the court and you know I understand what you're saying but the court went on and to say it is indisputable that an incorrect diagnosis by prison medical personnel does not state a claim for deliberate indifference the plaintiff must show that the officials a refused to treat him ignored his complaints intentionally treated him incorrectly or engaged in similar conduct that would clearly events a wanton disregard the decision whether to provide additional treatment is a matter for classic medical judgment yes and this was not a case of additional treatment Natalie Oliver had provided any treatment that wasn't her job she was a counselor that was tasked with the issue of making a doing a suicide screen she wasn't treating him at the time and she failed in all those respects she didn't she not only did nothing to protect him she put him in harm's way by removing the suicide watch that was there and to the extent she took some meager measures like telling him to take his medicine and moving him to a facility that she said was was quieter that did not address the immediate risk of harm that we can for committing suicide and so I would still say that Domino is is very much distinguishable from the present case there wasn't a question of additional treatment it was a question of whether he's going to be watched at home and she took that watch away I hope I've been responsible on my other issue to conclude on that now let me just let me just stay with that that issue if I might just to follow up a little bit you know not only was Eli gone forthcoming I don't think that there I've ever seen a case where there was there was more clear-cut evidence of a mentally ill suicidal detainee and he said he was always thinking of suicide he always had a plan he committed seven attempts only two and a half months earlier he attempted to hang himself he heard voices he tried to hurt himself a week before over Christmas because of these voices that alone would put her would let her know that he ought that he needed protection from himself he was bipolar he described himself as quote very very depressed constantly anxious in and out of psychiatric hospitals I mean I gather he was no stranger in the jail I don't know about that but well I think that's stated in the brief that he had been arrested a number of times so they didn't know him at the jail and they were familiar with whatever problems he had. I beg to differ that Natalie Oliver had any prior experience with him. Well I haven't read her deposition I'm just saying what I thought I read in the briefs. And I appreciate that and he may well have been a repeat player in the in the jail he was he was a young man you know he could have been part of his delusion that he was being forced to commit burglaries because people were going to attack his family you know this was part of the reason he was in and out of psychiatric hospitals but the question is did Natalie Oliver have subjective knowledge of a substantial risk of harm and she certainly did she admitted that when she said that she wasn't going to All right thank you sir. Next we'll hear from Ms. Pickett. Unmute nope nope unmute. I'm sorry I was told to do that but completely forgot. May it please the court Amber Pickett on behalf of appellee Natalie Oliver will I would like to make a few arguments in the same order that Mr. Thomas did beginning with immunity. You know with respect to the cases cited by and relied upon by plaintiffs we'd note that the analysis in Richardson and the subsequent cases tends to focus on the degree of supervision by the government entities as part of whether or not there's I think any timidity with respect to the purposes served by immunity that prong of the analysis as articulated by the Richardson court. However in all the cases relied upon there's not really significant discussion about what exactly limited supervision means under each particular circumstance and here you know the court went through analysis and the record reflects that there is I think more supervision than referenced in the cases relied upon by by plaintiff. The terms of the contract do require that CHC and its staff were required to operate within the requirements of the county's health care policies. Under the contract CHC was not permitted to make changes to staffing without approval to the of the sheriff. Background checks of the staff were performed by the county and the ability of the staff members to submit to final approval by the sheriff of the county. The sheriff could express dissatisfaction with CHC staff and if the matter was not resolved to the satisfaction of the sheriff, CHC could not allow the person to enter the facility and provide health care services to the detainees. Miss Oliver did report... Who was her immediate supervisor? I'm sorry? Who was her immediate supervisor? Miss Oliver did report to CHC but that administrator does report to the county as well pursuant to the contract and with respect to her making an independent determination with respect to Mr. Ghana she did. She's a you know licensed clinical social worker but she does consult with the county with respect to housing recommendations because of the space available at the were the in-camera records that Mr. Thomas referred to have been submitted to this court for in-camera review by your honors as well so that will be that's that the determination of the of CHC is is part of the record on appeal but she was not disciplined. You say she was required to defer to the county about housing the inmates but what is this that is in the other brief that says that she disagreed with putting someone like Ghana in the infirmary where he would be individually scrutinized? Did she say she disagreed with that county policy? She did not. She believed that isolation would worsen his condition because even though he expressed I mean there is some her understanding as a licensed clinical social worker is that you know isolation can destabilize certain people who have suicidal tendencies and so her solution in order to keep him stable was to place him in a quieter jail setting so there's segregated cells there's a more there's a general population and there's some kind of smaller housing situation with a few pods and while it does have people it's definitely less people than general population and so her solution was that to place him in the more limited quieter jail setting as opposed to general population. She did not simply release him to the general population if that answers that question and I mean she did make the determination independently with respect to the risk and where to place him but she consulted with the staff. I don't want to say that they overruled her. She did consult with them as to what was available and yes she could take someone off suicide watch but anyone including county staff to put someone back on if they felt that observing them in the jail they might have presented a risk and I think as your honor has pointed out Mr. Ghana had been at that jail before and had come in contact with jail staff before but not Miss Oliver and so you know to the extent that they had some awareness of his personality and disorders if they had observed anything and wanted a subsequent mental health evaluation by Miss Oliver they could have put him back on watch until you know she or another mental health care provider came to evaluate him again. May I step back on the matter of Mr. Thomas has cited three or four circuit court cases since Richardson and a couple of them since Polarski that have held that personnel in for-profit prisons or prison assist prison kinds of work are cannot use qualified immunity but I thought I saw a citation to a Tenth Circuit case is there a Tenth Circuit case that holds otherwise that you know of? Not that I'm aware of your honor I'm sorry. Okay I just thought I saw that reference somewhere but you do have to agree that several other circuits have held there's no qualified immunity. Correct I'd agree that they made that holding but I think what I was I think in part it's based on the level of supervision however the cases didn't analyze the facts that establish the government supervision in each of those cases cases to the extent that I just laid out. So we know we know from what decided apparently decided that Donna while he had been suicidal she didn't she thought that she knew what to do about it what what is the can you cite any cases that held no deliberate indifference under comparable circumstances other words what's your best authority for saying no deliberate indifference? I'm not sure about best authority but I liken this to I think the Flores case where Flores versus County of Hardeman in that case the sheriff placed a detainee on suicide watch placed him in a special cell and prohibited the use of certain supplies because of the detainee's strange behavior. Later I think maybe 12 hours or so the sheriff discontinued the watch because the detainee appeared to be doing better and even though the detainee later committed suicide this court found that the sheriff had not acted with deliberate indifference because the detainee did not give any indication of suicidal tendencies at the time and certainly I think in this instance the Sheriff's office, Ms. Oliver, determined that Mr. Donna was not immediately suicidal and therefore in light of his mental health condition she created a plan you know however unsuccessful that she believed would prevent Mr. Donna's condition from And I gather this was this event was investigated by the Texas Commission on Jail Standards? Yes I believe it was I don't recall I don't believe they issued a finding that there had been any wrongdoing but I honestly couldn't point to the citation in the record and state that with any degree of certainty. Well I mean we've had that in other cases and I didn't know whether they did it in the case of a contract medical company as opposed to the you know the governmental one. Well I believe I know that there was an investigation because the records the county did provide the record to the Commission you know to complete that I simply cannot recall right now what the results of that investigation were offhand. But that's in the record I guess. I believe so yes your honor. Honestly lost my train of thought but I do want to I guess point out I guess or distinguishing of Domino basically asserting that I think that this is not a case of incorrect diagnosis and his argument that you know she didn't treat him at all I think that the record shows that Miss Oliver did an evaluation she and Mr. Ghana discussed his mental health diagnoses his medications his prior instances of suicide attempts and how they differed from his current and how his condition at the time differed from his current condition his prior drug use his relationships and so you know and she didn't just you know tell him to take his medication but it was part of a comprehensive plan of hers to keep him the reference to the medication was because at the last his last suicide attempt he had not been on medication and so her recommendation was for him to you know an agreement to try and get him to stay on his medication so that he would remain stable so it wasn't just take your medication you'll be fine it was an acknowledgement that she had considered his prior history and evaluated in light of his current condition and and and and factor that into her treatment plan to keep him stable so you know in addition to the medication you know she discussed with him reaching out to staff if he had a change in condition staying active um and she's scheduled a mandatory follow-up session with her as well so it wasn't just that she when was that going to occur i believe within the next week when she came back from the holidays but i can't recall specifically if it was within the next week but i do know that a mandatory follow-up evaluation was and it was mandatory follow-up evaluation was scheduled for mr ghana let me ask you in the jail here uh i presume they didn't allow him to walk into a pod with his uh with his little bottle of abilify right i mean the way the way much medicines are dispensed the jail would have been responsible for giving him that medication would they not correct um right um as part of the health care services once a prescription is placed you know and there's no allegation that he didn't get it right i don't believe planets have made that assertion um and then so i believe that kind of covers um all the conduct with respect to uh her conduct um right um oh um with respect so i guess moving on to the next issue of whether or not the determination of the district court was premature um those arguments i think uh arise a little late um the the argument is based on rule 56d allowing for the continuance of a premature motion for summary judgment to gather evidence however plaintiffs never made a motion seeking a continuance based on the absence of those protective records um plaintiffs only filed a motion seeking additional time to respond to the summary judgment motion because of technical issues with the with the council server um plants only raised the complaint that they had not been able to sufficiently respond to the summary judgment motion um or present their best case after the magistrate judge had issued his report and recommendations so never before the judge looked at it did they bother to raise the issue of those records um and ask the court to wait until a ruling on the discovery motion before issuing any recommendations as to the um as to the actual motion for summary judgment rather they fully briefed it and responded to it on the merits um and i guess with respect to whether or not the um records are protected um defendant maintains that they are protected by the patient safety work product privilege which is established under the patient safety and quality improvement act of 2005 um the documents that issue like as we've said before um were submitted to the court in camera as part of the record um the record indicates the documents were created as part of a patient safety evaluation system um for the purpose of reviewing patient care and for the purpose of reporting to a patient safety organization the documents were created in or input into a risk management system which was separate from the medical chart the records were either reported or scheduled to be reported to the patient safety organization the records were not created to satisfy any reporting requirement to a state agency plaintiff's argument regarding the timeliness of the doesn't negate the record status as patient safety work product um for example we've cited um a case from a virginia court lewis v appaday i'm not sure if that's pronounced correctly but where the court determined that the statutory definition allows for unreported records to be patient safety work product because they were collected within a patient safety evaluation system the ruling was based on the court's observation that the regulations issued by the secretary of the department of health and human services provided for a more expansive definition that protected information at collection and that is consistent with one of the act's definitions of patient safety work product which includes records that identify or constitute the patient safety evaluation system as the collection management or analysis of information for reporting to or by a patient safety organization the definition does not require the records to have actually been reported um the definition is actually notably in contrast to an alternative alternative definition of patient safety work product under the act which protects records that are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization therefore the timeliness of the reporting is is of no concern with respect to the determination of whether or not those records constitute patient safety work product and the records were never disclosed to any other party including the county there was a custodial death investigation by following Mr. Ghana's death and the county as required did notify the commission of Mr. Ghana's death and provided whatever documentation was necessary to the commission um and if those records that are currently you know in the record in camera for the score to review have been part of the county's disclosure they would have been contained in the records obtained by plaintiffs following up their public information records request and they were not therefore we believe the privilege applies to the records um and as I'm coming up on time here if there are no further questions I will just conclude by requesting that the court affirm the grant of summary judgment um to Ms. Oliver based on her qualified immunity. Okay thank you very much um we'll return to Mr. Thomas for rebuttal. Okay you're on mute again unmute yourself please I know it's very don't everybody does it it's frustrating. I actually have a sign up here that says unmute I'm still still doing um Judge Jones you did see a reference to a 10th circuit case in Pernicchio um but what I want clarify is that it is not this fact pattern it is not the fact pattern of a of a large private contractor systematically organized for profit take on administrative state function uh the uh 10th circuit case involved a doctor who the state used to administer death penalty injections and uh and that was more similar to the uh situation with the Tulane University professors. Right. The um I would say that returning to the uh to the policy guidance here that the county can certainly issue um whether it actually did or not uh the record is silent but I would say people supervise not paper and the county can issue all the paper it wants but that doesn't make Natalie Oliver closely supervised by a person um this was just high level policy guidance that the county could do it didn't even specifically address mental health it simply said that the county could issue policies and procedures which directly relate to the provision of medical services and certainly it could but that's a very loose umbrella under which uh CHC was operating. I bring the court's attention back to uh the statement uh in converse uh recent statement of converse and I want to emphasize that that uh recently in Joseph versus Bartlett uh the court ruled that uh its due order of pleading actually requires the court to consider cases that address the issue after the incident at issue but are applying a law that was clearly established before the incident and I think uh therefore converse is fair game here and I think it's very very appropriate converse reiterated that taking some reasonable precautions does not mean the officer on the whole behaves reasonably and I think that is apropos here uh converse relies upon Jacobs and Jacobs uh they they took some measures the first day uh they uh they didn't give the detainee any sheets or anything the detainee could hang himself with uh but the second day they did they gave him a sheet and he promptly hung himself with so the fact that they were more careful the first day didn't mean that they were not deliberately indifference and uh and the laces to hang himself uh but they gave him a blanket and he probably used that to hang himself so they effectively took one ligature device away and gave him another ligature device and that did not overcome the problem of their deliberate indifference and the same here nothing that Natalie Oliver did overcame the huge deliberate indifference resulting from actually actively taking him off suicide watch cases and about whether other people were deliberately indifferent after he was transferred to cases about Natalie Oliver's actions and inactions and she was excuse me Mr. Thomas what is a bilipi what does it do uh it's a psychotropic drug that from my understanding is designed to try to level out a person's person's emotions and I have no reason to think that he wasn't given it uh but I have every reason to think that he committed seven he attempted suicide seven times in the past when he was on a vilify his entire life you don't have any evidence about that well I do no well no you've made allegations but the characteristics of people with these kinds of problems is that when they are unsupervised they don't take their medication and I think that's that's a that's a fair inference that he had gone off his medication many times well but when he's in the jail he's he's getting his medication that's the only point I'm making well and that that may may well have occurred here but I don't think we can assume that the other instances where he committed attempted suicide he wasn't on his proof on that well what we what we what we gave the court was his records that show he had been on and vilify basically his entire adult life now that's what he said well the records also the county records uh back that up from our expert report that uh that reviewed those and included and that's my remark all right sir thank you very much thank you we'll take it under advisement